**Ralph D. KAISER, Petitioner,**

v.

**REAL ESTATE COMMISSION OF THE DISTRICT OF COLUMBIA,**
Respondent.

No. 2411.

Municipal Court of Appeals for the District of Columbia.

Argued July 13, 1959.

Decided Nov. 19, 1959.

Rehearing Denied Dec. 8, 1959.

Jacob Sheeskin, Washington, D. C., with whom Jack A. Hillman, Washington, D. C., was on the brief, for petitioner.

Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent. Ted D. Kuemmerling, Asst. Corp. Counsel, Washington, D. C., also entered an appearance for respondent.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

Petitioner, a licensed real-estate broker, was charged by the Commission with violations of Sections 1408(g) and (h), Title 45,

Code 1951, in that: (1) he failed to properly account for or remit money coming into his possession belonging to others, Code 1408(g); and (2) had demonstrated such unworthiness or incompetency to act as such broker as to endanger the interests of the public, Code 1408(h). The pertinent provisions of the statute are set forth below.[1] After a hearing, petitioner's license as a real-estate broker was suspended for 90 days.

In his petition for review petitioner's principal contentions are: (1) The Commission having failed to determine that he was acting as a "real-estate broker" as defined in 45-1402 (Code 1951) had no power to suspend his license as such broker; and (2) The Commission had no authority to act because only two members conducted the hearing on the complaint against him.

■ The answer to the first question is found in the record. In the order notifying petitioner of the time and place of the public hearing to be held on the charges against him, and in the formal charges as well as the specifications detailing the facts in the transactions regarded as improper, it was clearly stated that the charges preferred against him involved him in his capacity as a *licensed real-estate broker* so that there can be no question but that petitioner knew that he was charged with violations of the statute while acting as a *real-estate broker and because of his transactions while acting as such.*

On the day of the hearing respondent appeared with counsel. The charges and specifications above referred to were incorporated in the stenographic record by consent of counsel. After the prospective witnesses were sworn, but before any of them testified, the following transpired:

"Chairman Adams: Mr. Campbell [Assistant Corporation Counsel] and Mr. Hillman [Petitioner's attorney], were you able to agree on facts which might be stipulated?

"Mr. Campbell: If it please the Commission, I believe that we have reached an area of agreement. Mr. Hillman will state it. I believe what he states will materially shorten the hearing and obviate the necessity of any testimony.

"Mr. Hillman: If the Commission please, the Respondent, Mr. Kaiser, and myself have discussed this matter. We are of the opinion after I have discussed it with Mr. Campbell that the charges and factual situation included in the charges are substantially correct. We have no qualms with merely mitigation of the charges.

"I would like to express that there was never at any time any intent on Mr. Kaiser's part to deliberately violate any section of the Real Estate Act or anything in good conscience.

\*   \*   \*   \*   \*   \*

"As far as we are concerned, I do not think there is any need for the Commission to take any testimony, and we rely solely upon the good judgment of this Commission.

"Chairman Adams: Mr. Campbell, do you have any remarks which you wish to make, or should the Commission take this under advisement?

"Mr. Campbell: I suggest that the Commission take the matter under advisement as it sees fit.

---

1. Title 45-1408: "The [Real Estate] Commission may \* \* \* investigate the conduct of any real-estate broker \* \* \* and shall have the power to suspend or to revoke any license issued under the provisions of this chapter, at any time \* \* \* where the licensee, in performing or attempting to perform any of the acts mentioned herein, has—

\*   \*   \*   \*   \*   \*   \*

"(g) Failed, within a reasonable time, to account for or to remit any money \* \* \* coming into his possession which belong[s] to others;

"(h) Demonstrated such unworthiness or incompetenty to act as a real-estate broker \* \* \* as to endanger the interests of the public \* \* \*"

"Chairman Adams: Mr. Hillman, do you have anything else to say?

"Mr. Hillman: I have nothing.

"Chairman Adams: Ladies and gentlemen, we thank you very much for coming. This conference and stipulation has eliminated the necessity for the taking of any testimony. * * *"

The petitioner and his counsel were clearly advised that the claimed violations occurred while he was acting as a *real-estate broker*. His counsel stated to the Commission: "The charges and factual situation included in the charges are substantially correct." This constituted an admission by petitioner that he committed the acts in question while he was acting as a *real-estate broker* and the Commission in its findings, conclusions of law and decision, following his counsel's admission, clearly made a determination that petitioner was acting as such broker when he performed the acts that it found constituted a violation of the statute.

In his second point petitioner in this review challenges the validity of the entire proceedings on the ground that only two members of the three-member Commission were present when the hearing was conducted and the order of suspension rendered.

Code 1951, 45–1403, the statute establishing the Real Estate Commission, provides that the Commissioners for the District of Columbia shall appoint two persons to serve as members of this board. The Assessor (now the Finance Officer) is designated as the third member. By this same provision the Commissioners were authorized to make any reasonable regulations necessary to effect the statute. Accordingly, in their Reorganization Order No. 59, as amended

June 24, 1958,[2] the Commissioners appointed the Chief of the Property Tax Division of the Finance Office to serve as an alternate for the Finance Officer. Petitioner takes the position that where the power to act is conferred upon several persons, all are required to act before the power can be exercised.[3] The fact that the Reorganization Order No. 59 provides for an alternate, he argues, is indicative of an intent that proceedings before the Real Estate Commission must be conducted before a full complement of the board.

■ Petitioner's argument has two notable weaknesses. The first is that the organic act establishing the Real Estate Commission makes no provision for the appointment of alternate members and nowhere in it does Congress manifest an intent that all of the members must participate in the proceedings. Secondly, assuming that the Commissioners for the District of Columbia are vested with the authority to designate alternates, their Reorganization Order No. 59 specifies that the Chief of the Property Tax Division shall serve *only* as an alternate for the Finance Officer. He may not substitute for other members of the Commission and there is no provision naming an alternate for them.[4] The statute is silent as to how many members are necessary to constitute a quorum and we apply, therefore, the common law rule that in the absence of any statutory restriction a majority of the body will constitute a quorum and a majority of the quorum can act, providing all members had notice and an opportunity to be present. In re Slavens, 166 Ohio St. 285, 141 N.E.2d 887. See also Brown v. District of Columbia, 127 U.S. 579, 8 S.Ct. 1314, 32 L.Ed. 262; Clark v. City Council of Waltham, 328 Mass. 40, 101 N.E.2d 369; Gaskins v. Jones, 198 S.C. 508, 18 S.E.2d 454; In re Walters' Appeal, 270

---

2. Code 1951, Title 1 Appendix (Supp. VII).

3. Morris v. Cashmore, 253 App.Div. 657, 3 N.Y.S.2d 624, affirmed, 278 N.Y. 730, 732, 17 N.E.2d 143, 144; Talbot v. Board

of Education, 171 Misc. 974, 14 N.Y.S.2d 340.

4. In this connection see May-Day Realty Corporation v. Zoning Board of Review, 77 R.I. 469, 77 A.2d 539.

Wis. 561, 72 N.W.2d 535; Lake De Smet Reservoir Company v. Kaufmann, 75 Wyo. 87, 292 P.2d 482; 4 McQuillin, Municipal Corporations, § 13.30 (3d ed. 1949). The original order containing the charges and the time and place of the hearing was signed by all of the members. At a subsequent meeting of the Commission the date of the hearing was changed and a formal notification to this effect signed by the secretary of the Commission was mailed to petitioner. Although the record does not affirmatively show that notice of the rescheduled hearing was given to all the members, in the absence of any showing to the contrary, as here, notice is presumed. In re Slavens, supra; Gunnip v. Lautenklos, 33 Del.Ch. 415, 94 A. 2d 712; 4 McQuillin, supra.

Affirmed.