229 A.2d 769.

Robert S. Kent *et al. vs.* Zoning Board of Review of the City of Cranston.

MAY 26, 1967.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

259

POWERS, J. This is a petition for certiorari which seeks to quash a decision of the respondent board of review granting the application of a husband and wife for permission to erect a single-family dwelling on an undersized lot in a residential zone. We issued the writ, and in compliance therewith the pertinent records were duly certified to this court for our examination.

It appears therefrom that on January 12, 1966, Joseph A. Ricci and wife Etta Ricci purchased a lot of land containing 3,974 square feet, located at the corner of Roslyn avenue and Deborah Way in the city of Cranston. It is not disputed that at the time the lot was purchased by the Riccis the size of the lot satisfied the then applicable Cranston zoning regulations for a single-family dwelling. On January 24, 1966, however, an amended ordinance became effective by the provisions of which a minimum lot area of 6,000 square feet was required.

Between January 12 and 24, 1966, the Riccis applied to the building inspector for a permit to construct a ranch-type, single-family dwelling, but were denied such permit apparently on the ground that the lot in question was the product of an illegal subdivision. Whether such was the reason can only be assumed, since the owner, Joseph A.

Ricci, testified at a hearing before respondent board that the building inspector gave him no reason, and the building inspector did not testify. Neither is there any communication from him, official or unofficial, that sheds any light on his reasons for denying the building permit. However, the petition for certiorari recites a series of transfers of the subject property from which averments petitioners argue that the lot in question resulted from a resubdivision of two original lots, in violation of G. L. 1956, §45-23-1, as amended. They are, that prior to January 10, 1966, J. J. Deb-Cin Homes, Inc., hereinafter referred to as the realty company, was the owner of lots 71 and 70 on assessor's plat 11/1, lot 71 containing some 7,100 square feet. It fronted 71′ on Roslyn avenue and had a depth of 100′ running easterly along Deborah Way. Lot 70, contiguous to the north of lot 71, fronted 60′ on Roslyn avenue and also had a depth easterly of 100′. It contained 6,000 square feet.

On January 10, 1966, the realty company conveyed by separate deeds these two lots to James R. DeCesare and his wife Emelia. The first such deed conveyed all of lot 71 and the southerly 10 feet of lot 70. The second deed conveyed what remained of lot 70. These deeds were promptly recorded establishing the DeCesares as the owners of lot 70, which now contained 8,100 square feet, fronting 81′ on Roslyn avenue, and lot 70 now containing 5,000 square feet, fronting 50′ on Roslyn avenue. Both lots continued to extend 100′ easterly.

On the same day the DeCesares obtained a building permit for each lot as thus divided. Thereafter, on January 12, 1966, the DeCesares subdivided lot 71 as then constituted by conveying the subject property to the Riccis. It fronted 81′ along Roslyn avenue and 50′ on Deborah Way. The result of this was to create two lots out of lot 71, each being 81′ by 50′ and leaving lot 70 50′ by 100′.

It is Mr. Ricci's testimony that on January 15 or 16 he

applied to the building inspector for a permit to erect a three-bedroom, ranch-type, single-family dwelling and was refused, the building inspector giving no reason for his refusal.

It should be noted that the recitation of the manner in which the property passed from the realty company to the DeCesares and then from them to the Riccis is taken from the averments set forth in the petition for certiorari. So, too, is the statement that the DeCesares had obtained a building permit for each lot before conveying the corner half of lot 71 to the Riccis. The respondent having filed neither an answer nor special pleas to the petition for certiorari, the allegations of fact contained therein are considered to be undisputed. *Roberts* v. *Board of Elections*, 85 R. I. 203, 129 A.2d 330.

Having been thus refused a building permit, the Riccis on March 25, 1966, filed an application with the respondent board which appears to be both an appeal from the decision of the building inspector under chap. 30, art. X, sec. 49 (1) of the January 1966 amendment to the zoning ordinance and §45-24-19(a) of the enabling act, and an application for a variance under sec. 49(p) of said amended ordinance and §45-24-19(c) of the enabling act.

Notice of the application was duly given and a public hearing was held thereon April 13, 1966, at which respondent board treated the application as one for a variance. The owner-applicant, Joseph A. Ricci, testified that he spoke to his grantors, the DeCesares, about purchasing the property early in January, but that he did not know that they were not the owners at that time; and further that he did not know that the lot he and his wife purchased did not exist as such at the time they agreed to buy it. In addition to that of the applicant Ricci, testimony in support of the application was given by a real estate expert. A property

owner living in the immediate neighborhood testified in opposition.

On May 20, 1966, the respondent board rendered a decision, filed June 1, 1966, in which they found that the amended zoning regulations of January 24, 1966, imposed a hardship, and thus granted the Riccis permission to construct a three-bedroom, ranch-type, single-family dwelling in accordance with the plans submitted. However, the record discloses that although four members of the board voted to grant the relief sought, the chairman abstained from voting. Whether he did so because he believed that his vote would make no difference, four affirmative votes being sufficient, or for a reason that should have called for his disqualification ab initio, does not appear.

The petitioners, all property owners residing in the immediate vicinity, and several within a radius of 100' of the subject property, seek to have the decision of the respondent board quashed as being illegal, arbitrary and an abuse of discretion. In support of their position, petitioners make four contentions: that abstaining from voting by the chairman was jurisdictionally fatal; that the trisecting of lot 70 was an illegal subdivision with which the subject property is tainted; that the board failed to find that the granting of a variance was not contrary to the public interest; and finally that because of the illegal subdivision the Riccis were entitled to reimbursement under the provisions of §45-23-13, and for this reason suffered no hardship.

The petitioners' first contention is predicated on the holdings of this court in *May-Day Realty Corp.* v. *Zoning Board of Review*, 77 R. I. 469, 77 A.2d 539, *Menard* v. *Zoning Board of Review*, 83 R. I. 283, 115 A.2d 533, and *Bove* v. *Board of Review*, 95 R. I. 197, 185 A.2d 751. Each of those cases holds that to be validly constituted for the holding of a hearing on any matter over which a zoning board of review has jurisdiction, the board must consist of five par-

ticipating members. In *May-Day, supra,* a sixth auxiliary member had not been appointed as required by §45-24-14, as amended, and after the death of one of the five members, the remaining four held a public hearing on an application for an exception or variance. This court quashed the decision, holding that with the passage of P. L. 1949, chap. 2293, which required the naming authority to appoint a sixth auxiliary member, the legislature had intended to amend the then G. L. 1938, chap. 342, sec. 8, precursor to §45-24-14, as amended, so as to make five participating members available in the event that one of the five regularly appointed members was unavailable for service.

In the *Menard* case this court quashed the decision of a three-member board acting pursuant to the provisions of a home rule charter and did so on the grounds that a five-member participating board was a jurisdictional requirement.

The circumstances in *Bove* v. *Board of Review, supra,* were that the chairman announced at the opening of the hearing that he was disqualifying himself and that the auxiliary member would vote in his stead, but that as chairman he would conduct the hearing. Again, this court quashed the decision holding that six participating members rendered the hearing jurisdictionally defective.

While we acknowledge, as argued by respondent board, that the instant case is readily distinguishable on its facts from the cases relied on by petitioners, we think nevertheless that with the assured participation of a five-member board at all hearings provided for by the enactment of P. L. 1949, chap. 2293, the legislature intended that the participation thus assured would be all-inclusive. This is to say that the evidence for and against an appeal from the administrative officer, or an application for a special exception or variance, would be heard and weighed by each of the five members who, after an exchange of views by means of

which each member of the board would have the benefit of his associates' impressions, would reach his own conclusion, express it and have it recorded.

In reaching this result, we are not unmindful of the provisions of G. L. 1956, §45-24-15. It provides: "The board shall keep minutes of its proceedings, showing the vote of each member upon each question or, *if absent or failing to vote, indicating such fact,* and shall keep records of its examinations and other official actions, all of which shall be filed immediately in the office of the board and shall be a public record." (italics ours)

This provision, including the language italicized by us, was originally a part of G. L. 1938, chap. 342, sec. 8, which section was as heretofore related amended by P. L. 1949, chap. 2293. In *May-Day Realty Corp.* v. *Zoning Board of Review, supra,* at page 473, 77 A.2d at 541, this court pointed out that certain language in *Richard* v. *Zoning Board of Review,* 47 R. I. 102, 130 A. 802, as bearing on the number of members of a board of review required to sit in order to have a legal hearing had meaning only prior to the 1949 amendment. Likewise, it is our opinion that the amendment effected by P. L. 1949, chap. 2293, resulted in eliminating from the now §45-24-15 the implied right of a member to abstain from voting.

It follows that the instant record disclosing that the chairman of the board was recorded as abstaining from voting, the board's decision is illegal and should be quashed. Since the record also discloses that four concurring votes were cast in favor of the relief sought, merely remanding the cause to the respondent board for the recording of the chairman's vote would constitute an idle gesture, and for that reason the cause should be remanded for a hearing de novo.

Moreover, the applicants Ricci acquired the land prior to the change in zoning and, it is not disputed, applied to

the building inspector for a permit at a time when they would presumably have been entitled to favorable consideration by that officer. In such circumstances, recourse by them to the respondent board should be by way of appeal from the ruling of the building inspector and thus make him and his records part of the appeal proceedings as provided in §45-24-16.

Having reached this conclusion we need not consider the petitioners' remaining contentions in these proceedings.

The petition for certiorari is granted, the decision of the respondent board is quashed without prejudice to the Riccis to appeal to the respondent board from the decision of the building inspector, and the records in the case are ordered returned to said board with our decision endorsed thereon.

*Del Sesto & Del Sesto, Christopher T. Del Sesto, Jr.,* for petitioners.

*Jeremiah S. Jeremiah, Jr.,* Assistant City Solicitor, for respondents.